UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **HOLLY KAYE HIBBLER,** Petitioner, vs. **J. HOWARD,** Respondent. | 2:21-CV-10291-TGB-PTM<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF NO.1), DENYING CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER PERMISSION TO PROCEED IN FORMA PAUPERIS ON APPEAL** |

Holly Kaye Hibbler, a Michigan state prisoner proceeding pro se, has petitioned for a writ of habeas corpus. 28 U.S.C. § 2254. Hibbler pleaded no contest to reckless driving causing death. MCL § 257.6264. She argues that her 10 to 15-year sentence violates the Sixth and Fourteenth Amendment because it was based on judicially found facts, violates her right to a proportionate and individualized sentence, and is unreasonable. Hibbler's petition is **DENIED**. Additionally, the Court declines to issue a certificate of appealability. Should Hibbler wish to appeal, she is **GRANTED** leave to proceed in forma pauperis.

## I. BACKGROUND

Hibbler's conviction arises from the death of nine-year-old Samuel

Myers. The trial court summarized the facts as follows:[1]

> [O]n Wednesday, August the 8th, at about 7:45[a.m.], the Defendant struck nine-year-old Samuel Myers as he was walking his bike with his mother Sharon along the side of Maxwell Road. Sharon was also hit and seriously injured by Defendant's car.
>
> This violent collision caused massive injuries to Samuel. He was transported to McLaren Hospital[,] and then airlifted to DeVos Hospital in Grand Rapids where unfortunately he passed away just a few hours later.
>
> Instead of stopping her car immediately to render aid and summon emergency assistance, the Defendant continued on down the road and around a corner. Then when she thought she was out of sight, she stopped and attempted to hide evidence of her wrongdoing by getting rid of an open beer can and the floor mats of her car that had beer spilled on them.
>
> Then she sent and received several text messages, and only sometime later did she return to the scene of the collision. Luckily there were others in the vicinity that heard the sounds of the collision and came to render aid and called 911[.]
>
> * * *
>
> On the date of the incident, [Defendant] had a medical marijuana card, and she now admits that she was smoking marijuana on that day as well as drinking beer. The officers on the scene observed that she was slurring her words, had the odor of alcohol on her breath. Her eyes were droopy. She couldn't accurately recount to them what time of day it was, and she displayed other signs and indications of intoxication to the officers. They took a PBT at the scene that showed her

---

[1] The parties stipulated that the trial court could rely on the probable cause affidavit and police report to provide the factual basis for the plea and for sentencing purposes. (ECF No. 9-2, PageID.112, ECF No. 9-3, PageID.143.)

2

blood-alcohol level at .067, and a later blood test showed that she was at .04.

Testing also showed that she had morphine in her system. She told the officers that she was taking a variety of other prescription medications. According to the presentence report, those included, I believe, morphine and aripiprazole, cyclobenzaprine—cyclobenzaprine—I've got the common names of several of these—but again, she had morphine in her system, and morphine and alcohol are both depressants, and the combination of these two drugs can and does cause drowsiness, lack of coordination, motor skill impairment and delayed responsiveness. Morphine together with marijuana can cause fatigue, blurred vision, hallucinations and mental confusion.

She was taking something called Pristiq, an anti-depressant that also causes or would exacerbate drowsiness. She was also on Flexeril, a prescription muscle relaxant with effects like narcotics, in other words causing relaxation and drowsiness. She was also taking Abilify, another antidepressant that causes or would contribute to drowsiness.

All this together, with the observations of the officers on the scene, who are trained to detect the signs of intoxication, confirmed their conclusion which are in the police reports that I reviewed; that is[,] that the Defendant was significantly impaired or intoxicated when she struck the victims.

She initially told the officers that she'd consumed just one beer. Later on she admitted to consuming two. A case of beer was found in her trunk, and just six of them [were] left. She told the officers she'd smoked marijuana saying "just enough to get a little buzz." She said the effect on her was one on a scale of one to ten. Later on she admitted that she had smoked marijuana twice that day and rated herself as a five out of ten.

She initially presented the officers with the claim that her cruise control had somehow malfunctioned and that this was

3

somehow the cause of the collision. She said, "my cruise control got stuck. I wasn't looking up because the cruise control must have goop in it." She estimated her speed at 35; said she couldn't stop until she just got around the corner, which makes no sense. Later on she put her speed up to 50 miles an hour. She said she was using her cruise control because she got tired due to her intoxicants that she had ingested, but it makes no sense that one would use cruise control a short distance between where she had to stop at the corner of Maxwell Road and Newsom Road, and the 90 degree corner where Maxwell Road goes from westbound to northbound—a 90 degree corner—it just makes no sense.

[N]ot only do the facts show that she left the scene and attempted to hide evidence, but she was trying to avoid responsibility by giving false information to the investigating officers at the scene.

Now the weather was clear; it was daylight. The road in question is a straight section of the road with good visibility. There were no visual obstructions that would have prevented her from seeing and avoiding the victims. One of the officers said there was at least a hundred yards of clear visibility as she approached the bicyclists from the east. In short, there was no reason if she was sober and paying attention for her having failed to see and avoid the victims.

ECF No. 9-3, PageID.144–48.

Hibbler was charged in Emmet County Circuit Court with reckless driving causing death. Hibbler entered a no contest plea, and, on January 8, 2019, she was sentenced to 10 to 15 years imprisonment.

Hibbler filed an application for leave to appeal in the Michigan Court of Appeals claiming that the trial court abused its discretion by departing upward from the sentencing guidelines and that her sentence

4

was disproportionate. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Hibbler*, No. 350122 (Mich. Ct. App. Sept. 13, 2019).

Hibbler filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. *People v. Hibbler*, 939 N.W.2d 687 (Mich. 2020).

Hibbler then filed the pending petition for a writ of habeas corpus. She argues that her sentence violates the Sixth and Fourteenth Amendment given the following:

i. The sentence was based on judicially found facts in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Alleyne v. United States*, 570 U.S. 99 (2013),

ii. The sentence violates her right to a proportionate and individualized sentence, and

iii. The sentence is unreasonable.

## II. Legal Standard

A § 2254 habeas petition is governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the

evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 125 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable — a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (cleaned up).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

Hibbler challenges her sentence of 10 to 15 years, which exceeded the minimum sentencing guidelines range of 36 to 71 months. The Michigan Court of Appeals denied Hibbler's claims in a one-sentence summary order, stating that leave to appeal was denied "for lack of merit in the grounds presented." *See People v. Hibbler*, No. 350122 (Mich. Ct.

6

App. Sept. 13, 2019). Without some indication to the contrary, this type of summary order is considered an adjudication on the merits to which AEDPA deference applies. *See Harrington v. Richter*, 562 U.S. 86, 99–100 (2011). Because Hibbler offers no basis for rebutting that presumption and the Court finds none, AEDPA's deferential standard of review is appropriate.

First, Hibbler argues that she was sentenced based on impermissible judicial fact-finding. Under the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The same requirement applies to any fact that increases a mandatory minimum. *Alleyne v. United States*, 570 U.S. 99, 111–12 (2013). In *People v. Lockridge*, the Michigan Supreme Court held that, under *Alleyne*, the mandatory application of Michigan's sentencing guidelines was unconstitutional. 498 Mich. 358, 388–89 (2015). To remedy this violation, the Michigan Supreme Court made the sentencing guidelines advisory. *Id.* at 391–92.

Hibbler was sentenced after *Lockridge* was decided and the state sentencing guidelines were made advisory. Purely advisory applications of the sentencing guidelines do not violate the Sixth Amendment. *United States v. Booker*, 543 U.S. 220, 233 (2005). Here, the state trial court departed upwards from the sentencing guidelines. Thus, the guidelines range is immaterial; the Supreme Court has never suggested that

7

judicial fact-finding in support of a court's exercise of sentencing discretion, as happened here, violates the Sixth Amendment. *See id.* at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts."). Hibbler's claim is without merit.

Second, Hibbler argues that her sentence is disproportionate and not individualized. The Supreme Court has held that "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277, 288 (1983)). Courts reviewing Eighth Amendment proportionality must remain highly deferential to the legislatures in determining the appropriate punishments for crimes. *United States v. Layne*, 324 F.3d 464, 473–74 (6th Cir. 2003) (citing *Harmelin*, 501 U.S. at 999). "In implementing this 'narrow proportionality principle,' the Sixth Circuit has recognized that 'only an extreme disparity between crime and sentence offends the

8

Eighth Amendment.'" *Cowherd v. Million*, 260 F. App'x 781, 785 (6th Cir. 2008) (quoting *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000)). If the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining "the type and extent of punishment for convicted defendants." *Williams v. New York*, 337 U.S. 241, 245 (1949).

Hibbler's sentence was not grossly disproportionate or excessive. The statutory maximum for reckless driving causing death under Michigan law is 15 years. MCL § 257.626. Her sentence, therefore, did not exceed the statutory maximum; as such, it was not unreasonable.

Hibbler also claims that her right to an individualized sentence was denied. There is no clearly established federal law establishing a right to individualized sentencing in non-capital cases. *See United States v. Odeneal*, 517 F.3d 406, 415 (6th Cir. 2008); *Hynes v. Birkett*, 526 F. App'x 515, 522 (6th Cir. 2013); *cf. United States v. Corum*, 354 F. App'x 957, 963 (6th Cir. 2009) (recognizing it is "not fully settled" where there is a constitutional right to an individualized sentence for a non-capital defendant). Because there is no clearly established constitutional right to individualized sentencing, Hibbler cannot show that the state court's decision denying this claim was contrary to, or an unreasonable application of, federal law.

Finally, Hibbler argues that her sentence was unreasonable because the state court considered facts already accounted for in the

9

sentencing guidelines. A state court's interpretation and application of sentencing guidelines present issues only of state law that are not cognizable on habeas review. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991). Hibbler points to no clearly established federal law limiting a trial court's discretion to rely on factors already accounted for in the guidelines scoring to justify an upward departure. *Cf. United States v. Tristan-Madrigal*, 601 F.3d 629, 636 n.1. (6th Cir. 2010) (declining, in the context of the Federal Sentencing Guidelines, to adopt a bright-line rule rendering a sentence unreasonable whenever a court considers conduct in imposing a variance that was already used to calculate the guidelines range).

## IV. CONCLUSION

Hibbler's petition for a writ of habeas corpus is **DENIED**. Further, the Court finds that reasonable jurists would not debate this Court's resolution of Hibbler's claims, so the Court **DENIES** a certificate of appealability. *See Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). If Hibbler still chooses to appeal, she may proceed in forma pauperis. *See* 28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

BY THE COURT:

Dated: April 9, 2024

s/Terrence G. Berg
HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE